[Civ. No. 3453. Fifth Dist. Dec. 14, 1977.]

DALE KLEMM et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
COUNTY OF FRESNO, Real Party in Interest.

894

COUNSEL

Catherine S. Bailey for Petitioners.

James Vance Henry as Amicus Curiae on behalf of Petitioners.

Robert M. Wash, County Counsel, Max E. Robinson, Assistant County Counsel, and Charles O. Lamoree, Deputy County Counsel, for Respondent and for Real Party in Interest.

OPINION

**BROWN (G. A.), P. J.**—The ultimate issue herein is to what extent one attorney may represent both husband and wife in a noncontested

dissolution proceeding where the written consent of each to such representation has been filed with the court.

Dale Klemm (hereinafter husband) and Gail Klemm (hereinafter wife) were married and are the parents of two minor children. They separated after six years of marriage, and the wife filed a petition for dissolution of the marriage in propria persona. There was no community property, and neither party owned any substantial personal property. Both parties waived spousal support. The husband was a carpenter with part-time employment.

At the dissolution hearing Attorney Catherine Bailey appeared for the wife. It developed that Bailey is a friend of the husband and wife and because they could not afford an attorney she was acting without compensation. The attorney had consulted with both the husband and wife and had worked out an oral agreement whereby the custody of the minor children would be joint, that is, each would have the children for a period of two weeks out of each month, and the wife waived child support.

The trial judge granted an interlocutory decree and awarded joint custody in accord with the agreement. However, because the wife was receiving aid for dependent children payments from the county, he referred the matter of child support to the Family Support Division of the Fresno County District Attorney's office for investigation and report.

The subsequent report from the family support division recommended that the husband be ordered to pay $25 per month per child (total $50) child support and that this amount be paid to the county as reimbursement for past and present A.F.D.C. payments made and being made to the wife. Bailey, on behalf of the wife, filed a written objection to the recommendation that the husband be required to pay child support.

At the hearing on the report and issue of child support on April 25, 1977, Bailey announced she was appearing on behalf of the husband. She said the parties were "in agreement on this matter, so there is in reality no conflict between them." No written consents to joint representation were filed. On questioning by the court the wife evinced uncertainty as to her position in the litigation. The wife said, "She [Bailey] asked me to come here just as a witness, so I don't feel like I'm taking any action against Dale." The judge pointed out that she (the wife) was still a party. When first asked if she wanted Bailey to continue

as her attorney she answered "No." Later she said she would consent to Bailey's being relieved as her counsel. She then said she didn't believe she could act as her own attorney but that she consented to Bailey's representing the husband. After this confusing and conflicting testimony and a request for permission to talk to Bailey about it, the judge ordered, over Bailey's objection, that he would not permit Bailey to appear for either the husband or the wife because of a present conflict of interest and ordered the matter continued for one week.

At the continued hearing on May 2, 1977, Bailey appeared by counsel, who filed written consents to joint representation signed by the husband and wife and requested that Bailey be allowed to appear for the husband and wife (who were present in court). The consents, which were identical in form, stated: "I have been advised by my attorney that a potential conflict of interest exists by reason of her advising and representing my ex-spouse as well as myself. I feel this conflict is purely technical and I request Catherine Bailey to represent me." The court denied the motion,[1] and the husband and wife have petitioned this court for a writ of mandate to direct the trial court to permit such representation.

Rule 5-102 of the State Bar Rules of Professional Conduct states:

"(A) A member of the State Bar shall not accept professional employment without first disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment. A member of the State Bar who accepts employment under this rule shall first obtain the client's written consent to such employment.

"(B) A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned." (3B

---

[1] The court grounded its ruling upon the following reasoning: "[U]nder our canons of ethics and rules of conduct it would be improper for Miss Bailey to appear in this proceeding on behalf of the respondent where there is not in the court's opinion a theoretical conflict, but an actual conflict of interest in this respect: This proceeding is to determine what amount, if any, the respondent will pay on account of child support to the petitioner Gail Klemm. At this point in time the court is advised and at the April 25th hearing that Mrs. Klemm was receiving public assistance, the end result being that whatever amount ordered paid and in fact paid would be paid to the Family Support Division and would not actually be realized by the petitioner in that if such amounts would become a part of the overall monthly grant.

"However, there is obviously a potential if not actual point in time when the petitioner may not be receiving public assistance in which case whatever order, if any, is made to her benefit on account of child support in this proceeding would be the amount subject to modification that she would receive on account of child support at least for some period of time."

West's Ann. Bus. & Prof. Code (1974 ed., 1977 cum.supp.) foll. § 6076 at p. 65 [Deering's Cal. Codes Ann. Rules (1976 ed.) at p. 614].)[2]

The California cases are generally consistent with rule 5-102 permitting dual representation where there is a full disclosure and informed consent by all the parties, at least insofar as a representation pertains to agreements and negotiations prior to a trial or hearing. (*Gregory* v. *Gregory* (1949) 92 Cal.App.2d 343, 349 [206 P.2d 1122] [marital settlement agreements]; *Davidson* v. *Davidson* (1949) 90 Cal.App.2d 809, 819 [204 P.2d 71]; *Lessing* v. *Gibbons* (1935) 6 Cal.App.2d 598, 605-606 [45 P.2d 258] [court approved attorney acting for both studio and actress in concluding negotiations and drawing agreements. The court refers to the common practice of attorneys acting for both parties in drawing and dissolving partnership agreements, for grantors and grantees, sellers and buyers, lessors and lessees, and lenders and borrowers].) Where, however, a fully informed consent is not obtained, the duty of loyalty to different clients renders it impossible for an attorney, consistent with ethics and the fidelity owed to clients, to advise one client as to a disputed claim against the other. (*Dettamanti* v. *Lompoc Union School Dist.* (1956) 143 Cal.App.2d 715, 723 [300 P.2d 78].)

Though an informed consent be obtained, no case we have been able to find sanctions dual representation of conflicting interests if that representation is in conjunction with a trial or hearing where there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another. (See *Anderson* v. *Eaton* (1930) 211 Cal. 113 [293 P. 788]; *Hammett* v. *McIntyre* (1952) 114 Cal.App.2d 148, 153-154 [249 P.2d 885]; *McClure* v. *Donovan* (1947) 82 Cal.App.2d 664, 666 [186 P.2d 718].) ■ As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed. Such representation would be per se inconsistent with the adversary position of an attorney in litigation, and common sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other.

[2]Likewise, rule 4-101 permits the representation of interests adverse to a client or former client with the informed written consent of the client: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." (3B West's Ann. Bus. & Prof. Code (1974 ed., 1977 cum. supp.) foll. § 6076 at p. 64 [Deering's Cal. Codes Ann. Rules (1976 ed.) at p. 609].)

■ However, if the conflict is merely potential, there being no existing dispute or contest between the parties represented as to any point in litigation, then with full disclosure to and informed consent of both clients there may be dual representation at a hearing or trial. (*Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575 [184 P.2d 505]; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 146-147 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]; see *Arden* v. *State Bar* (1959) 52 Cal.2d 310 [341 P.2d 6].)

■ In our view the case at bench clearly falls within the latter category. The conflict of interest was strictly potential and not present. The parties had settled their differences by agreement. There was no point of difference to be litigated. The position of each *inter se* was totally consistent throughout the proceedings. The wife did not want child support from the husband, and the husband did not want to pay support for the children. The actual conflict that existed on the issue of support was between the county on the one hand, which argued that support should be ordered, and the husband and wife on the other who consistently maintained the husband should not be ordered to pay support.

While on the face of the matter it may appear foolhardy for the wife to waive child support,[3] other values could very well have been more important to her than such support—such as maintaining a good relationship between the husband and the children and between the husband and herself despite the marital problems—thus avoiding the backbiting, acrimony and ill will which the Family Relations Act of 1970 was, insofar as possible, designed to eliminate. It could well have been if the wife was forced to choose between A.F.D.C. payments to be reimbursed to the county by the husband and no A.F.D.C. payments she would have made the latter choice.

Of course, if the wife at some future date should change her mind and seek child support and if the husband should desire to avoid the payment of such support, Bailey would be disqualified from representing either in a contested hearing on the issue. (Rules of Prof. Conduct, rule 4-101; *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614 [120 Cal.Rptr. 253].) There would then exist an actual conflict between them, and an attorney's duty

---

[3]It is to be noted that the parties' agreement that the children should not receive support would not prevent the court from awarding child support either at the hearing or at some time subsequent thereto. Therefore, the children's rights are not in issue nor are they jeopardized. (*Elkind* v. *Byck* (1968) 68 Cal.2d 453 [67 Cal.Rptr. 404, 439 P.2d 316]; *Krog* v. *Krog* (1948) 32 Cal.2d 812 [198 P.2d 510].)

to maintain the confidence of each would preclude such representation. (*Industrial Indem. Co.* v. *Great American Ins. Co.* (1977) 73 Cal.App.3d 529 [140 Cal.Rptr. 806].)

The conclusion we arrive at is particularly congruent with dissolution proceedings under the Family Law Act of 1970, the purpose of which was to discard the concept of fault in dissolution of marriage actions (Civ. Code, §§ 4506, 4509), to minimize the adversary nature of such proceedings and to eliminate conflicts created only to secure a divorce. (*In re Marriage of Cary* (1973) 34 Cal.App.3d 345 [109 Cal.Rptr. 862] (disapproved on other grounds in *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 665 [134 Cal.Rptr. 815, 557 P.2d 106]); *The End of Innocence: Elimination of Fault in California Divorce Law* (1970) 17 UCLA L.Rev. 1306) It is contrary to the philosophy of that act to create controversy between the parties where none exists in reality.

We hold on the facts of this case, wherein the conflict was only potential, that if the written consents were knowing and informed and given after full disclosure by the attorney, the attorney can appear for both of the parties on issues concerning which they fully agree.

It follows that if we were reviewing the order of the trial court after the first hearing held on April 25, 1977, the petition for mandate would have to be denied on the ground that no written consents to joint representation had been procured at that time. Moreover, as a result of the judge's questioning of the wife, he could have reasonably concluded that the wife's consent was not given after a full disclosure and was neither intelligent nor informed.

The order before us, however, is the order entered after the second hearing held on May 2, 1977, at which time the written consents of both the husband and wife, dated that date, were received by the judge without further inquiry of the clients or of the attorney. It could well have been that between April 25 and May 2 and before signing the written consents the parties became apprised of sufficient information to make the written consents intelligent and informed. The situation on May 2 was not necessarily the same as it was on April 25. The record of the May 2 hearing reflects no inquiry whatsoever as to whether the written consents were knowing, informed and given after full disclosure. Thus it appears the trial judge failed to exercise his discretion in accordance with proper legal principles. Accordingly, the cause must be

returned to the trial court to make the determination of whether the consents were knowing, informed and given after a full disclosure.

■ A word as to procedure. Initially, the trial court is entitled to accept properly executed written consents to joint representation at their face value. The judge is entitled to presume the attorney is familiar with the law and code of professional ethics and has complied with the proper standards. However, if the judge has any question regarding whether the proper standards have been observed, it is his duty to either require counsel to inquire further or inquire himself regarding the circumstances of the execution of the written consents and the state of mind of the clients for the purpose of making the necessary factual determination in this regard.[4]

■ Finally, as a caveat, we hasten to sound a note of warning. Attorneys who undertake to represent parties with divergent interests owe the highest duty to each to make a full disclosure of all facts and circumstances which are necessary to enable the parties to make a fully informed decision regarding the subject matter of the litigation, including the areas of potential conflict and the possibility and desirability of seeking independent legal advice. (*Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520 [50 Cal.Rptr. 592].) ■ Failing such disclosure, the attorney is civilly liable to the client who suffers loss caused by lack of disclosure. (*Lysick* v. *Walcom, supra,* 258 Cal.App.2d 136.) In addition, the lawyer lays himself open to charges, whether well founded or not, of unethical and unprofessional conduct. (*Arden* v. *State Bar, supra,* 52 Cal.2d 310.) Moreover, the validity of any agreement negotiated without independent representation of each of the parties is vulnerable to easy attack as having been procured by misrepresentation, fraud and over-reaching. (*Gregory* v. *Gregory* (1949) 92 Cal.App.2d 343 [206 P.2d 1122].) It thus behooves counsel to cogitate carefully and proceed cautiously before placing himself/herself in such a position.

As was said in *Anderson* v. *Eaton, supra,* 211 Cal. 113, 116: "It is also an attorney's duty to protect his client in every possible way, and it is a

[4]A trial court has the inherent and statutory power to intervene on its own initiative to inquire into any appearance of impropriety, control the proceedings to remedy the defect, and even disqualify an attorney if that appears necessary. (Code Civ. Proc., § 128; People v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 261, fn. 4 [137 Cal.Rptr. 476, 561 P.2d 1164]; *Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215 [288 P.2d 267]. *Cloer* v. *Superior Court* (1969) 271 Cal.App.2d 143 [76 Cal.Rptr. 217] is not inconsistent with the above cases because the trial court exceeded these powers by disqualifying an attorney where no impropriety existed in the proceeding before it.

violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation.] By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent. [Citation.]"

We have considered respondent's other contentions and find them to be without merit.

It is ordered that a peremptory writ of mandate issue directing the trial court to reconsider Bailey's motion to be allowed to represent both husband and wife, that the court determine if the consent given by each was knowing and informed after a full disclosure by the attorney, and to decide the motion in accordance with the principles set forth in this opinion.

Petitioners shall recover costs.

Gargano, J., and Hopper, J., concurred.