[Civ. No. 44760. First Dist., Div. Four. Feb. 2, 1979.]

KENNETH ROSWALL et al., Plaintiffs and Respondents, v.
THE MUNICIPAL COURT FOR THE NORTHERN SOLANO
JUDICIAL DISTRICT OF SOLANO COUNTY,
Defendant and Appellant.

## COUNSEL

Milton Goldinger, County Counsel, Billy B. Burton, Chief Deputy County Counsel, and Charles O. Lamoree, Deputy County Counsel, for Defendant and Appellant.

Paul Ligda, Public Defender, for Plaintiffs and Respondents.

Quin Denvir, State Public Defender, and Harold E. Shabo, Deputy State Public Defender, as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

DRUMMOND, J.*—Appellant Municipal Court for the Northern Solano Judicial District (hereinafter the Municipal Court) appeals from an order of the Superior Court of Solano County issuing a writ of mandate in favor of petitioners-respondents Kenneth Roswall and James J. Reardon (hereafter respondents).[1] The order directs the Municipal Court to reappoint public defenders to represent respondents after they had been relieved of their duties. The issue is whether the court, having once determined a defendant to be eligible for public defender legal services and had appointed the public defender, has discretion to discharge the appointed counsel at a later proceeding upon a subsequent finding of nonindigency without affirmative consent of counsel or client.

On March 21, 1978, both respondents were arraigned in the Municipal Court, each having been charged with violating section 23102, subdivision

---

*Assigned by the Chairperson of the Judicial Council.

[1]No final judgment granting the writ appears of record. However, since neither party has raised the point and the order appears to have been meant as a final disposition on the merits, we may, in the interests of justice and the prevention of delay, treat the order as incorporating a judgment and construe the notice of appeal as applying to that judgment. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 337, p. 4316; *Reyna* v. *City and County of San Francisco* (1977) 69 Cal.App.3d 876, 879 [138 Cal.Rptr. 504].)

(a), of the Vehicle Code (drunk driving). After respondents were interviewed by the financial investigation office and found eligible for legal assistance at county expense, the public defender was appointed to represent each.

The respondents had met with a deputy public defender and discussed their respective cases as well as possible defenses before the April 7 appearances. On April 7, 1978, both respondents came before the court for disposition proceedings.

Respondent Roswall was asked how he wished to plead. Roswall answered not guilty. The judge then inquired as to whether the defendant desired a jury trial. When the public defender answered affirmatively, the judge asked Roswall if he was still unemployed, to which he responded "No, I'm not." Respondent stated that he had been employed for two weeks, earning $450 per month. The judge thereupon sent Roswall to be re-interviewed to see if he was still eligible for the services of the public defender. Upon Roswall's return, the judge informed him that the result of the interview indicated he was no longer eligible for the services of the public defender. A continuance was ordered so that Roswall could obtain private counsel, which the respondent stated that he was unable to do.

At the Reardon hearing, the deputy public defender informed the court that Reardon wished a jury trial. The judge then asked him if he was "still" unemployed, to which Reardon answered that he had been working for the past year at Travis Air Force Base. The employment had been disclosed at his first indigency hearing. After learning that Reardon was earning $450 per month and had received an income tax refund in the amount of $287, which he no longer had available to him, the judge determined that he was no longer eligible for public legal assistance and told Reardon to "[g]o on out and get yourself a lawyer." In response to an inquiry by the court, the public defender stated that she had spent approximately one hour's time on Reardon's case. Neither respondent nor the public defender affirmatively consented to the removal of counsel.

On April 19, 1978, respondents filed a petition for writ of mandate in superior court, requesting that the Municipal Court be ordered to reappoint the public defender to represent them.

On June 6, 1978, after a hearing on the matter, the superior court issued an order granting the writ. The Municipal Court appeals this decision.

The Municipal Court contends that it "has the inherent power, and duty, to remove the Public Defender after appointment when it determines that a criminal defendant is not indigent, and that the removal will not prejudice the defense of the criminal charges."

On the other hand, respondents and amicus curiae California Public Defenders Association, urge that once the attorney-client relationship was established, the court has no power to interfere with it except in conformance with Code of Civil Procedure section 284.[2]

To begin our inquiry, we must examine the development of law in the area.

Government Code section 27706 provides that upon request of the defendant or order of the court, the public defender shall defend any person who is not financially able to employ counsel and who is charged with any offense triable in the superior, municipal or justice courts. In *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391], the California Supreme Court held that this section grants the public defender a power to determine the eligibility of a defendant for appointed counsel which is "coequal with the power of the court." (*Id.,* at p. 841.) Accordingly, the court held that once the public defender has undertaken to provide a defendant with legal representation, the court has no power to remove counsel on grounds of financial ineligibility. (*Id.,* at p. 840.)

In response to the *Ingram* decision, the Legislature enacted Government Code section 27707 (hereafter section 27707) which provides that "[t]he court in which the proceeding is pending may make the final determination in each case" as to whether a defendant is financially able to employ counsel, although the public defender may *sua sponte* represent the defendant until a contrary determination is made by the court.[3] ▮ The effect of this statute is to provide for judicial review of a public defender's determination of indigence.

---

[2]This section provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

[3]The full text of section 27707 reads as follows: "The court in which the proceeding is pending may make the final determination in each case as to whether a defendant or person described in Section 27706 is financially able to employ counsel and qualifies for the services of the public defender. The public defender shall, however, render legal

The problem we face here is whether the court, having once made a determination of eligibility and sanctioned the formation of the attorney-client relationship, may reopen the inquiry at a later proceeding and relieve the public defender should it find that the defendant is in fact able to employ private counsel.

In *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65], the Supreme Court ruled that a court-appointed attorney could not be removed on the basis of the court's subjective determination of "incompetence." ■ In language which was subsequently relied upon by *Ingram,* the court stated: ". . . once counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused." (68 Cal.2d at p. 562.) *Smith* held that the inhibition imposed on a defense attorney by the threat of removal "constitutes a serious and unwarranted impairment of his client's right to counsel." (*Id.,* at p. 561.)

Although Code of Civil Procedure section 284, by its terms, permits counsel to be removed only upon request or with the consent of the attorney or his client (see fn. 2), recent Supreme Court cases have upheld the power of the court to remove an attorney involuntarily where there is the appearance of serious impropriety. (See *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164] [prosecutor removed because conflict of interest might prejudice him against the accused]; *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971] [attorney disqualified where substantial likelihood that partner in his firm would testify as a witness].) In each of the aforementioned cases, the court found authority for the trial court's action in Code of Civil Procedure section 128.[4] (*Greer, supra,* 19 Cal.3d at p. 261, fn. 4; *Comden, supra,* 20 Cal.3d at p. 916, fn. 4.) Section 128

services as provided in subdivisions (a), (b) and (c) of Section 27706 for any person the public defender determines is not financially able to employ counsel until such time as a contrary determination is made by the court. If a contrary determination is made, the public defender thereafter may not render services for such person except in a proceeding to review the determination of that issue or in an unrelated proceeding. In order to assist the court or public defender in making the determination, the court or the public defender may require a defendant or person requesting services of the public defender to file a financial statement under penalty of perjury."

[4]This section provides in pertinent part: "Every Court shall have power: . . . 5. To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter

would also appear to sanction the removal of counsel upon the court's own motion where the attorney exhibits objective evidence of physical incapacity. (*Smith, supra,* 68 Cal.2d at p. 559; *People* v. *Coogler* (1969) 71 Cal.2d 153, 169 [77 Cal.Rptr. 790, 454 P.2d 686].) Where, however, none of these circumstances exists, it has been held beyond the power of the trial court to remove counsel contrary to the wishes of the parties involved. (*Cloer* v. *Superior Court* (1969) 271 Cal.App.2d 143, 145-146 [76 Cal.Rptr. 217].) ■ As the Supreme Court later characterized its holding in *Smith,* ". . . the involuntary removal of *any* attorney is a severe limitation on the defendant's right to counsel and may be justified, if at all, only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed." (*Cannon* v. *Commission on Judicial Qualifications* (1975) 14 Cal.3d 678, 697 [122 Cal.Rptr. 778, 537 P.2d 898], italics added.)[5]

Although, as the Municipal Court correctly contends, section 27707 now vests discretion in the trial court to make the final determination of eligibility for the public defender's services, the court's authority to reopen the inquiry once it has made the appointment must be viewed in light of other applicable principles. It is clear from the authorities just cited that interference with the attorney-client relationship can be justified only in the most extreme circumstances of incapacity or ethical impropriety. Indeed, the Supreme Court voiced its concern in *Ingram* that, given the lack of judicial power to remove a defense attorney upon a finding of "incompetency," "*A fortiori,* a court cannot remove an attorney on the far less relevant ground of the nature of the financial arrangement between him and his client. To do so would, as in *Smith,* infringe upon the defendant's right to counsel of his choice and compromise the independence of the bar." (69 Cal.2d at p. 840.) Furthermore, section 27707 " 'should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Section 27706 provides that the public defender shall represent a

---

appertaining thereto. . . ." Section 128 has been held applicable in criminal as well as civil cases. (See *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274]; *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 826 [85 Cal.Rptr. 744].)

[5]*People* v. *Ward* (1972) 27 Cal.App.3d 218 [103 Cal.Rptr. 671], stands out as an anomalous case in the group herein cited. There, the appellate court held that the trial court did not abuse its discretion in replacing appointed counsel because conflicts in his personal schedule would have required a four-week delay in the commencement of trial. It was noted, however, that strict compliance with section 284 had been waived and did not automatically prejudice appellant's rights. (*Id.,* at p. 234.) Furthermore, the court indicated that the result might well have been different had the action been contested through writ proceedings rather than assigned as error on appeal. (*Id.,* at p. 236.)

defendant without expense to him "except as provided by Section 987.8 of the Penal Code. . . ." Section 987.8 provides that in any case where the defendant is furnished with counsel, "*upon the conclusion of the criminal proceedings* in the trial court, the court shall, after a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost of counsel." (Italics added.) Should the court determine that the defendant has such ability he may be ordered to pay all or part of such costs.

Penal Code section 987.8 thus provides for complete remedial action by the court should there be a change in circumstances between the time counsel has been appointed and the conclusion of the proceedings, indicating that the defendant should have borne all or part of the expense of his legal representation.[6] In view of the existence of Penal Code section 987.8, the sanctity of the attorney-client relationship as articulated by the Supreme Court, and the severe interference with a defendant's right to counsel which the threat of arbitrary removal of a public defender poses, we strongly doubt that the Legislature intended section 27707 to confer upon the trial court an unlimited power to redetermine the issue of financial eligibility and summarily discharge appointed counsel in the event of an adverse finding during the course of the proceedings.

The dangers inherent in permitting the trial court to make such a redetermination are numerous: (a) It allows for arbitrary judicial interference with the attorney-client relationship on grounds unrelated to a genuine concern with the defendant's financial eligibility. (See *Cannon v. Commission on Judicial Qualifications, supra,* 14 Cal.3d 697-698, where the Supreme Court severely chastised the conduct of one trial judge who, for personal reasons, frequently substituted one deputy public defender for another during ongoing proceedings.) (b) The threat of such removal power could be used to penalize a defendant's rights to counsel, to speedy trial and to trial by jury as guaranteed by the United States and California Constitutions. (U.S. Const., Sixth Amend.; Cal. Const., art. I, §§ 15, 16.) The instant case is illustrative: the judge below did not question respondents' financial eligibility until a jury trial was demanded. Having exercised their constitutional right, respondents were then subjected to a reinvestigation of their financial status and the forcible removal of their attorneys, with whom they had begun to prepare their case. As a result, newly retained counsel would be faced with the prospect of duplicating the work of appointed counsel and hastily familiarizing

---

[6]The constitutional validity of section 987.8 was upheld by the Supreme Court in *People* v. *Amor* (1974) 12 Cal.3d 20 [114 Cal.Rptr. 765, 523 P.2d 1173].

himself with the facts of an ongoing proceeding. Inevitably, postponements and continuances would have to be sought in order for counsel to "catch up" with the efforts of his predecessor. Respondents were thus burdened with a penalty on their Sixth Amendment rights which a plea-bargaining defendant would likely have escaped. (c) It will subvert the atmosphere of trust and confidence which is absolutely vital to the relationship between an indigent client and the public defender. (Cf., *Geiler* v. *Commission on Judicial Qualifications* (1973) 10 Cal.3d 270, 286 [110 Cal.Rptr. 201, 515 P.2d 1]; *People* v. *Canfield* (1974) 12 Cal.3d 699, 705 [117 Cal.Rptr. 81, 527 P.2d 633].) It is essential that once the attorney-client relationship is established, a defendant represented by appointed counsel should feel free to disclose information in confidence and be assured that his attorney will represent his interests to the best of his ability. The threat that counsel could, at any time during the proceedings, be dismissed on the basis of an inquiry into his client's finances, would seriously undermine the entire foundation of that relationship.

■■ We therefore conclude that once the court has made its determination that a defendant is financially eligible for legal assistance at public expense and has appointed counsel to represent him, it may not thereafter, without the defendant's consent, remove that attorney on grounds of financial ineligibility. We do not in any way imply that the court may not review the public defender's decision to represent the defendant as the result of that office's investigation. However, section 27707 and the Supreme Court's pronouncements in *Ingram* impel the conclusion that if the trial court wishes to review a defendant's eligibility for public legal services, it must do so at the earliest opportunity, in almost all instances before or during the first court appearance of counsel. (See *Ingram, supra,* 69 Cal.2d at p. 840.) Once the court has permitted the defendant to proceed with representation by the public defender or has formally appointed counsel, it must thereafter " 'keep hands off and permit counsel to control the case within the embrace of his right to do so.' " (*Id.,* quoting from *People* v. *Ferry* (1965) 237 Cal.App.2d 880, 890 [47 Cal.Rptr. 324].) At that point the court's sole remedy for enforcing a financially able defendant's burden of paying the cost of counsel will be a hearing into the matter at the conclusion of the criminal proceedings, as provided for in Penal Code section 987.8.

Appellant has pointed out in its reply brief that Penal Code section 987.8 has been amended by a 1978 enactment. (Stats. 1978, ch. 1134, p. —.) As the enactment did not take effect until January 1, 1979 (Cal.

Const., art. IV, § 8, subd. (c)), it has no application in the present case. We do not perceive in it any support for appellant's interpretation of section 987.8 in its present form.

Since the Municipal Court had no authority to relieve respondents' counsel from their duties, the superior court properly granted a writ of mandate compelling the reappointments.

Affirmed.

Caldecott, P. J., and Rattigan, J., concurred.